In re Darrel R. ROBERSON, Debtor.

Bonnie L. ROBERSON, Plaintiff,

v.

Darrel R. ROBERSON, Bruce H. Matson, Trustee, Defendant.

Bankruptcy No. 94–32721–S.
Adv. No. 95–3048–S.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Sept. 19, 1995.

E. Duffy Myrtetus, Wells, Paris, Blank and Brown, Richmond, VA, for Plaintiff.

Richard O. Gates, Chesterfield, VA, Bruce H. Matson, LeClair Ryan Joynes Epps & Framme, Richmond, VA, for Defendant.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY,
Bankruptcy Judge.

This adversary proceeding comes before the Court on the Complaint of Bonnie L. Roberson (Plaintiff or "Mrs. Roberson"). Mrs. Roberson requests that this Court abstain from determining the dischargeability of certain claims alleged by her against her former husband, Darrell R. Roberson (Debtor or "Mr. Roberson"), who was granted a discharge in his Chapter 7 case November 27, 1994. Should this Court elect not to abstain from considering this matter, Mrs. Roberson requests that this Court characterize certain claims she alleges against Mr. Roberson as nondischargeable. In the alternative, Mrs. Roberson requests that this Court revoke the discharge of Mr. Roberson.

This is a core proceeding, over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 157(b)(2)(I) and 1334. Upon consideration of the pleadings, the record, the evidence, and the argument of counsel, the Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

Mr. and Mrs. Roberson were granted a Final Decree in the dissolution of their marriage on September 1, 1993 by the Hanover County Circuit Court (hereinafter the "Final Decree"). Previously, that court appointed a Commissioner in Chancery (the "Commissioner"), to determine, among other things, the legal title and ownership interests of the parties in marital and personal property, an equitable distribution of marital property, entitlement of the parties to support and maintenance, appropriate means of awarding any property settlement—to include by conveyance of property—and entitlement of recovery of attorneys' fees and court costs. The Commissioner conducted two separate hearings, the first of which was not attended by Mr. Roberson, and prepared and submitted findings of fact and conclusions of law which were ultimately adopted by the Hanover County Circuit Court and incorporated into the Final Decree.

Pursuant to the Final Decree, Mr. Roberson was ordered to pay weekly child support to Mrs. Roberson. In addition, Mr. Roberson was ordered to pay Mrs. Roberson the sum of $2,200 for attorneys' fees and court costs, and was also ordered to convey his interest in certain real property located in

Hanover County, Virginia (the "Real Property"), to satisfy a $25,000 monetary award in favor of Mrs. Roberson. Both the Final Decree and Commissioner's report failed to specifically attribute the attorneys' fees and court costs award to any portion of the work performed on behalf of Mrs. Roberson in obtaining the Final Decree. However, since child support issues occupied a significant portion of the ultimate divorce decree finding, this Court determines as a matter of fact that the awarded attorneys' fees and court costs are integrally connected with the award of child support.

Mr. Roberson executed a quitclaim deed to transfer his interest in the Real Property in October of 1993. At a later hearing, the Hanover County Circuit Court ruled that its intention was that Mr. Roberson should convey his interest in the Real Property by general warranty deed with English covenants of title. Mr. Roberson complied with the Circuit Court's direction on November 24, 1993, conveying the Real Property by general warranty deed. However, evidence presented by the parties demonstrated that Mr. Roberson did not convey clear, unencumbered title to the Real Property. Instead, Mr. Roberson conveyed the property at a time when it was encumbered by a deed of trust, in the amount of $25,000, in favor of Robin B. Cowell. Evidence further demonstrated that at least a portion of the consideration underlying the deed of trust and its associated promissory note related to a loan from Ms. Cowell to Mr. Roberson. Specifically, on November 17, 1992, Ms. Cowell paid an amount equal to $16,765.06 on behalf of Mr. Roberson, ostensibly to avoid a foreclosure sale of the Real Property.[1] Trial testimony indicated that Ms. Cowell, an acquaintance, employee and housemate of Mr. Roberson, made the above payments with at least the implied understanding that the funds paid represented a "loan" to Mr. Roberson.

Mr. Roberson later signed a promissory note and the deed of trust in favor of Robin B. Cowell, both in the amount of $25,000, and both dated February 13, 1993. The deed of trust was secured by the Real Property. Both the deed of trust and the note were acknowledged by a notary on May 10, 1993, and the deed of trust was properly recorded on that same date in the Clerk's Office in Hanover County. The recordation of the deed of trust occurred after the parties' first hearing before the Commissioner, at which Mr. Roberson was not present, but prior to the second hearing date during which Mr. Roberson testified. Testimony at trial indicated that prior to submitting his report, the Commissioner was aware that Ms. Cowell had paid the prior loan on the Real Property, and of the existence of the deed of trust securing her loan to Mr. Roberson. The Commissioner claimed that he was not aware of the recordation of the deed of trust and resulting legal encumbrance. Testimony also indicated that Mrs. Roberson, through counsel, was also aware that the prior loan had been paid off, and of the potential existence of the deed of trust at a time prior to dissolution of her marriage to Mr. Roberson.

In an Order dated April 5, 1994, the Hanover County Circuit Court found Mr. Roberson in contempt of that court's orders for his failure to pay the forementioned award of attorneys' fees, and for his failure to comply with the "intent" of that court, which was for him to convey the Real Property free and clear of any liens created by him. A subsequent order of that court, dated August 8, 1994, sentenced Mr. Roberson to ten (10) days in jail and payment of fees as a result of the contempt charge.

Mr. Roberson commenced bankruptcy proceedings in this Court on August 1, 1994, requesting relief under Chapter 7 of the Bankruptcy Code. On November 27, 1994, this Court entered a Final Order for Discharge in Mr. Roberson's bankruptcy proceeding, thus effectively discharging him of those dischargeable debts that arose before the date of the order for relief in that pro-

---

1. Evidence adduced at trial indicated that Ms. Cowell wrote a personal check to First Virginia Bank Colonial in the amount of $15,948.90 in order to satisfy an encumbrance on the Real Property, and purchased a cashiers check in the amount of $816.16, payable to Taylor, Hazen & Kauffman, apparently to pay for legal costs and fees associated with the attempted foreclosure sale of the Real Property.

ceeding. This Court did not establish a bar date for filing of creditor claims against Mr. Roberson's bankruptcy estate due to the lack of bankruptcy estate assets and the absence of any distribution. Some question remains as to whether Mr. Roberson included Mrs. Roberson as a creditor in his initial bankruptcy filing.[2] However, Mr. Roberson affirmatively added Mrs. Roberson as a creditor in his Chapter 7 bankruptcy proceeding with an Affidavit of Added Creditors, filed with this Court on February 28, 1995.

## CONCLUSIONS OF LAW

By their stipulations, the parties narrowed the issues before the Court to the following three questions: (1) whether this Court should exercise its discretionary abstention in this matter pursuant to the provisions of 28 U.S.C. § 1334; (2) whether the award of title to the subject real property was made in lieu of an award of support, alimony, and/or maintenance and therefore was not dischargeable pursuant to the provisions of 11 U.S.C. § 523[3] and/or 11 U.S.C. § 105; and (3) whether the conveyance of the subject deed of trust by the defendant to Robin B. Cowell constitutes a preference or fraudulent conveyance. Based upon the Complaint and other pleadings filed, this Court also deems it proper to make findings with respect to the dischargeability of the attorneys' fees and court costs granted by the Hanover County Circuit Court Final Decree, as well as whether this Court should order the revocation of discharge of any debts claimed by Mrs. Roberson.

■ For reasons stated from the bench, this Court declines to permissively abstain from ruling on this matter pursuant to 28 U.S.C. § 1334(c)(1). Section 1334(c)(1) grants this Court the power to abstain from rendering a decision in this matter "in the interest of justice, or in the interest of comi-

ty, with State Courts or respect for State law ... from hearing a particular proceeding ... related to a case under title 11." See In re Keyco, Inc., 49 B.R. 507, 509 (Bankr. E.D.N.Y.1985) (quoting In re Smith–Douglass, Inc., 43 B.R. 616 (Bankr.E.D.N.C. 1984)). However, abstention is considered an " 'extraordinary and narrow exception' to the federal court's duty to adjudicate a controversy properly before it." In re American Motor Club, Inc., 149 B.R. 317, 323 (Bankr.E.D.N.Y.1993) (citations omitted). After careful consideration, this Court believes that the specific issues to be resolved here involve federal bankruptcy law almost exclusively, with little or no application of state law. Thus, this Court finds that voluntary abstention is inappropriate. See, e.g., Hillsborough Holdings Corp. v. Celotex (In re Hillsborough Holdings Corp.), 123 B.R. 1004, 1013 (Bankr.M.D.Fla.1990) (listing factors commonly used by courts in considering discretionary abstention) and In re American Motor Club, Inc., 149 B.R. 317, 323 (Bankr.E.D.N.Y.1993) (listing bankruptcy court discretionary abstention factors).

■ Although stipulated by the parties as one of the issues to be resolved, the question of whether or not the deed of trust to Ms. Cowell by Mr. Roberson constitutes either a preference or fraudulent transfer is not properly before this Court. In light of the fact that these allegations were not properly pleaded by the parties, and particularly in light of the fact that not all of the necessary parties have been joined in this action, this Court declines to hear evidence or make any findings on these issues. The absence of Ms. Cowell as a party to this proceeding effectively negates the possibility of making any findings or determinations with respect to those allegations.

The issues remaining to be resolved require an analysis of the policy and statutes

---

**2.** In his Answer to Mrs. Roberson's Complaint, Mr. Roberson alleges that he did include Mrs. Roberson's attorney as a creditor in his initial bankruptcy filing, thereby providing Mrs. Roberson with constructive notice of the bankruptcy proceeding.

**3.** The Court notes that Title 11 of the United States Code has been amended by the Bankrupt-

cy Reform Act of 1994. This case was filed in August of 1994. Therefore, all citations to Code sections within this Opinion refer to Title 11 of the Code in its former version, as the Code amendments relevant to this Opinion apply only to those cases filed after October 22, 1994. Bankruptcy Reform Act of 1994 § 702, Pub.L. No. 103–394, 108 Stat. 4106 (1994).

surrounding dischargeability of debts through bankruptcy, and potential grounds for denial or revocation of any discharge.

■ The Bankruptcy Code engenders a policy of providing a debtor with a "fresh start" through a discharge under 11 U.S.C. § 727(b) of "all debts that arose before the date of the order for relief." *Robb–Fulton v. Robb* (*In re Robb*), 23 F.3d 895, 897 (4th Cir.1994). Section 727(b) of Title 11 provides the debtor a discharge of debts "except as provided in section 523." Among the debts excepted from discharge in § 523 are those:

> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record ... but not to the extent that— ... (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

11 U.S.C. § 523(a)(5). Section 523(a)(5) "departs from the general policy of absolution or fresh start in order to 'enforce an overriding public policy favoring the enforcement of familial obligation.'" *Robb*, 23 F.3d at 897 (*quoting In re Sampson*, 997 F.2d 717, 721 (10th Cir.1993)).

■ The law is well settled in the Fourth Circuit and in the Eastern District of Virginia that attorney fee awards in divorce may be excepted from discharge under § 523(a)(5). *See, e.g., In re Silansky*, 897 F.2d 743 (4th Cir.1990) (attorney fee award held nondischargeable); *Beaton v. Zerbe* (*In re Zerbe*), 161 B.R. 939 (Bankr.E.D.Va.1994) (attorney fee award held nondischargeable where the intent of Commissioner in Chancery in granting award was to assist in the maintenance and support of ex-spouse); *Sposa v. Sposa* (*In re Sposa*), 31 B.R. 307 (Bankr.E.D.Va.1983) (attorney's fees held nondischargeable where the post-divorce ancillary proceeding in which they were awarded was closely related to an original nondischargeable support order). To determine whether an attorney fee award is nondis-

chargeable, the Court must first determine whether the debt connected with the fees is nondischargeable. *Bulman v. Bulman* (*In re Bulman*), 123 B.R. 24 (Bankr.E.D.Va. 1990) (fee award held nondischargeable where both property division and support were at issue). The burden is placed upon the objecting spouse to prove that the debt is "actually in the nature of alimony, maintenance, or support." *Tilley v. Jessee*, 789 F.2d 1074, 1077 (4th Cir.1986). This proof must be by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■ This Court's determination of whether a debt arising from divorce proceedings is in the nature of alimony, maintenance, or support is a matter of federal rather than state law. *Long v. West* (*In re Long*), 794 F.2d 928 (4th Cir.1986). While federal law governs in this instance, state law may be considered by the Bankruptcy Court, as there is no federal law of domestic relations. *Macys v. Macys* (*In re Macys*), 115 B.R. 883, 890 (Bankr.E.D.Va.1990). In examining whether the evidence put forward by the former spouse was sufficient to meet the burden of proof in this matter, this Court considers state law in light of the evidence presented.

Since 1982, the power of Virginia courts to enter decrees of support, maintenance, and property distribution has been found in three distinct sections of the Commonwealth's statutes. Judge Tice of this Court has found that the titles of these sections describe their individual purposes:

> Section 20–107.1. Court may decree as to maintenance and support of spouses.
> Section 20–107.2. Court may decree as to custody and support of minor children.
> Section 20–107.3. Court may decree as to properties of the parties.

*Macys*, 115 B.R. at 890–891 (*citing* Va.Code Ann. §§ 20–107.1–.3).

Section 20–107.1 provides that a state court can award spousal support and maintenance after it considers certain mandatory factors.[4]

---

4. The relevant portion of § 20–107.1 read as follows in 1993:

If the court determines that an award should be made, it shall, in determining the amount,

Section 20–107.3 of the Code of Virginia permits the divorce court to make property awards, the amounts of which are to be determined after consideration of specified factors which allow for an equitable distribution of marital property.[5] Significantly, support and maintenance are not to be considered when making the property award pursuant to § 20–107.3. *See* Va.Code Ann. § 20–107.3(F). Conversely, support and maintenance are to be awarded, if at all, only after considering any property settlement or monetary award granted under § 20–107.3. *See* Va.Code Ann. § 20–107.1(8).

While a state court label of an award as a property settlement does not bind this Court in its determination of dischargeability, the sections of the state statute relied upon by the state court may be of assistance in determining the intent of the trier of fact. In addition, the examination of a written document may provide evidence of intent. *Zerbe,* 161 B.R. at 941 (*citing Tilley,* 789 F.2d at 1077). However, as previously stated, the spouse objecting to the discharge bears the burden of proving that intent. Thus, while it may be true that property settlements or attorney fees awarded under § 20–107.3 may

be excepted from discharge under § 523(a)(5), *see Macys,* 115 B.R. at 892, it is the complaining spouse who must show that the award is in the true nature of support or maintenance.

In the matter before this Court, the Final Decree, marked as Pl.'s Ex. 2, is particularly revealing with respect to the intent of the state court.

> Upon consideration of the evidence, exhibits and the factors enumerated in **Section 20–107.3 of the Code of Virginia,** 1950, as amended, it is ORDERED that, in **satisfaction in whole of a monetary award** in the amount of $25,000.00 to Bonnie R. Roberson, Darrell R. Roberson convey his interest in the marital residence at 121 Linden Street, Ashland, Virginia to Bonnie L. Roberson.

(Pl.'s Ex. 2 at 2, 3) (emphasis added). This language is located within a section of the Final Decree that divides marital property. The Court further notes that the Commissioner's report specifically finds that the same real property is "marital property as defined in **Section 20–107.3 of the Code of**

---

consider the following:
1.  The earning capacity, obligations, needs and financial resources of the parties, including but not limited to income from all pension, profit sharing or retirement plans, of whatever nature;
2.  The education and training of the parties and the ability and opportunity of the parties to secure such education and training;
3.  The standard of living established during the marriage;
4.  The duration of the marriage;
5.  The age and physical and mental condition of the parties;
6.  The contributions, monetary and nonmonetary, of each party to the well-being of the family;
7.  The property interests of the parties, both real and personal, tangible and intangible;
8.  The provisions made with regard to the marital property under § 20–107.3; and
9.  Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.
Va.Code Ann. § 20–107.1 (1993).

5.  The elements considered are found in Va.Code Ann. § 20–107.3(E), which read as follows in 1993:

E.  The amount of any division or transfer of jointly owned marital property, and the amount of any monetary award, the apportionment of marital debts, and the method of payment shall be determined by the court after consideration of the following factors:
1.  The contributions, monetary and nonmonetary, of each party to the well-being of the family;
2.  The contributions, monetary and nonmonetary, of each party in the acquisition and care and maintenance of such marital property of the parties;
3.  The duration of the marriage;
4.  The ages and physical and mental condition of the parties;
5.  The circumstances and factors which contributed to the dissolution of the marriage, specifically including any ground for divorce under subdivisions (1), (3) or (6) of § 20–91 or § 20–95;
6.  How and when specific items of such marital property were acquired;
7.  The debts and liabilities of each spouse, the basis for such debts and liabilities, and the property which may serve as security for such debts and liabilities;
8.  The liquid or nonliquid character of all marital property;
9.  The tax consequences to each party; and
10.  Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable monetary award.
Va.Code Ann. § 20–107.3(E) (1993).

Virginia." (Pl.'s Ex. 3 at 3) (emphasis added). The Commissioner's report continues:

This Commissioner finds that based upon the equities and rights and interests of each party in the marital property, and based upon **consideration of the factors set forth in section 20–107.3(E),** the Defendant, Darrell R. Roberson, should pay $25,000.00 to Bonnie L. Roberson as a monetary award. Said award should not be payable in a lump sum or over a period of time in fixed amounts, but should be satisfied by the conveyance of property.

(Pl.'s Ex. 3 at 5) (emphasis added). In addition, the Commissioner specifically denied an award of Spousal Support "in consideration of all of the factors of Section 20–107.1. and all of the equities in the matter." (Pl.'s Ex. 3 at 2). Testimony before this Court by both the Commissioner and Mrs. Roberson's divorce attorney further demonstrated that the intent of those parties was to provide Mrs. Roberson with a property settlement, and not to provide her with spousal support.

This Court finds it is difficult to read an intent into the Final Decree or Commissioner's report that would convert the property division into an award in lieu of spousal support. The entire tenor of the evidence before this Court indicates a clear intent to order the conveyance of an interest in marital property as a means of dividing marital property under Va.Code § 20–107.3, thereby coloring this transaction as one of property settlement. This Court thereby concludes that the $25,000 property settlement represented by the mandatory conveyance of property is just that, a property settlement, and not an award in lieu of spousal support. Mrs. Roberson, as the objecting spouse, failed to prove otherwise by a preponderance, making it impossible for this Court to fit her $25,000 claim into the discharge exception represented by § 523(a)(5). Thus, Mrs. Roberson's $25,000 claim stemming from the Real Property transfer is a debt that was discharged in Mr. Roberson's Chapter 7 bankruptcy proceeding.

In order to be clear, this Court notes that, although not specifically stated in Mrs. Roberson's Complaint, the Plaintiff is clearly pursuing relief under § 523(a)(5), attempting to characterize the property conveyance and underlying debt as one in lieu of support, alimony or maintenance. Accordingly, this Court restricts its findings to the Plaintiffs § 523(a)(5) allegations.

This Court reaches a different result with respect to the attorneys' fees and court costs awarded in the Final Decree. Based upon the evidence presented, the Court made a finding of fact that the attorneys' fees and court costs awarded by the state court were integrally linked to the state court's award of child support. Mr. Roberson failed to controvert this evidence. Thus, the attorneys' fees and court costs awarded in the Final Decree are nondischargeable under § 523(a)(5).

This Court notes that although not argued by the parties, Mrs. Roberson makes an assertion in her Complaint that Mr. Roberson's failure to schedule Mrs. Roberson as a creditor in his initial bankruptcy petition, and prior to his discharge, represented a "calculated attempt to prejudice Plaintiff's attempt to protect her interests in this action." (Pl.Comp. ¶ 12.) The mere existence of this proceeding wherein Mrs. Roberson is able to receive a determination of the dischargeability of her claim under § 523(a)(5), and the revocability of Mr. Roberson's discharge under § 727(d) would appear to contradict any claim of prejudice. At the same time, this Court is keenly aware of the current varying judicial treatment of "unscheduled creditors" with respect to no asset, no bar date Chapter 7 proceedings. A recent opinion by Judge Mitchell of this Court outlines in detail the diverging lines of case law in this area. *See In re Woolard,* No. 93–24190–AB, 1995 WL 731271, 1995 Bankr. LEXIS 941 (Bankr.E.D.Va. June 6, 1995). Nonetheless, this Opinion is consistent with this Court's prior rulings on this issue. It is well settled that a debt which is otherwise dischargeable is discharged, notwithstanding the debtor's failure to schedule that debt, absent a showing of intentional omission or bad faith. *See, e.g., In re Godley,* 62 B.R. 258, 261 (Bankr.E.D.Va.1986). Mrs. Roberson has demonstrated neither intentional omission by Mr. Roberson, nor any prejudice to her position and ability to obtain relief.

Thus, this Court must reject Mrs. Roberson's implied assertion. However, to be clear, since Mrs. Roberson has apparently elected not to dispute the dischargeability of her claim pursuant to 11 U.S.C. §§ 523(a)(2), (4) or (6), this Court specifically declines to rule on the availability of § 523(a)(3)(B) as an exemption to the § 523(c) sixty day time limit within which to initiate such a claim. *See, e.g., In re Banks–Davis*, 148 B.R. 810, 813 (Bankr.E.D.Va.1992).

■ Mrs. Roberson's final argument asks in the alternative that this Court revoke any discharge granted to Mr. Roberson with respect to the $25,000 property settlement. This count of Mrs. Roberson's complaint falls under 11 U.S.C. § 727(d), which states that:

> (d) On request of the trustee, a creditor, or the United States Trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—

> (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;

> (2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee; or

> (3) the debtor committed an act specified in subsection (a)(6) of this section.

11 U.S.C.A. § 727(d). There were neither allegations nor evidence of any violations of §§ 727(d)(2) or (3),[6] making these sections inapplicable to the current proceedings. Therefore, in order to grant Mrs. Roberson the relief requested, this Court would have to make a finding that Mr. Roberson violated § 727(d)(1). The complaining party has the burden of proving all allegations with respect to a request to revoke a discharge, Bankruptcy Rule 4005, and based upon a clear reading of the statute, that party must demonstrate both the existence of fraud, and that she lacked knowledge of the fraud until after revocation.

This Court has previously ruled that revocation of a discharge based upon fraud requires a demonstration of "fraud in fact" committed by the Debtor.

> The fraud required to be shown is fraud in fact, involving moral turpitude or intentional wrong, and does not include implied fraud or fraud in law, which may exist without the imputation of bad faith or immorality. Further, in order to justify revocation of discharge in bankruptcy on the ground that it was obtained by fraud "it must appear that he [bankrupt] was guilty of such acts as would sustain a civil action for fraud or deceit, and that the statements were either knowingly false or fraudulent, or made so recklessly as to warrant a finding that he acted fraudulently."

*Race v. Zahralddin (In re Zahralddin)*, 1 B.R. 621, 623 (Bankr.E.D.Va.1979) (citations omitted).[7]

This Court can find no compelling evidence that would support Mrs. Roberson's assertion that Mr. Roberson committed "fraud in fact." Mr. Roberson's belated recordation of the Cowell deed of trust still occurred prior to the conclusion of the Commissioner's investigation and report. Further, there exists no evidence that Mr. Roberson attempted to hide assets or deceive his known creditors. As previously stated, Mr. Roberson's failure to initially include Mrs. Roberson as a creditor in his Chapter 7 proceeding is not, in and of itself, evidence of fraud, and Mr. Roberson's actions did not result in material prejudice to Mrs. Roberson.

---

**6.** Section 727(a)(6), to which § 727(d)(3) makes reference, provides the Court with the ability to deny discharge to any debtor who refuses to obey directives of the Court, or provide necessary and requested information to the Court. 11 U.S.C.A. § 727(a)(6).

**7.** The Court notes that the cited opinion, *In re Zahralddin*, was decided based upon then current law, 11 U.S.C. § 33. The relevant portions of 11 U.S.C. § 727(d) differ from the older § 33 only by restricting those parties permitted to seek a revocation of discharge. *See 4 Collier on Bankruptcy* ¶ 727.15[1][b], [2] (15th ed. 1995).

Based upon the evidence before this Court, even if fraud had existed, Mrs. Roberson could have and should have been aware of said fraud prior to this Court granting a discharge to Mr. Roberson. *See, e.g., Wood v. Cochard* (*In re Cochard*), 177 B.R. 639 (Bankr.E.D.Mo.1995) (daughter's request to revoke discharge of mother and step-father is denied since her knowledge and familiarity with the debtors ensured that she could have uncovered any fraud with a minimum of investigation). Assuming *arguendo* that the Cowell deed of trust encumbering the Real Property resulted from or represented fraudulent behavior by Mr. Roberson, the facts and evidence of this dispute clearly demonstrate that all parties had at least record notice of the deed of trust prior to the final hearing of the Commissioner in the Robersons' divorce proceeding. There is no evidence that Mr. Roberson attempted to hide the deed of trust from the Commissioner, Mrs. Roberson, or the Hanover County Circuit Court. On the contrary, the facts and evidence demonstrate that at least a portion of the debt underlying the present deed of trust arose as a result of the payment of a prior encumbrance on the Real Property, that the deed of trust was belatedly but properly recorded—providing record notice to all parties—and that the parties were aware of the pay-off of the prior loan in November of 1992 and of the potential lien of Ms. Cowell prior to the forced conveyance of the Real Property.

In summary, Mr. Roberson owed Mrs. Roberson an amount equal to $25,000 as a result of the property settlement outlined in the Final Decree. This debt was not fully satisfied by Mr. Roberson's transfer of the Real Property to Mrs. Roberson because the Real Property was encumbered by the Cowell deed of trust. Accordingly, that obligation constituted a claim in Mr. Roberson's bankruptcy proceeding. But as a result of this Court finding that the debt arose from a property settlement, that obligation was discharged in Mr. Roberson's bankruptcy proceeding. Finally, based upon the evidence and arguments presented, this Court finds that Mrs. Roberson failed to prove that Mr. Roberson obtained his discharge through fraud, a finding which is fatal to Mrs. Roberson's attempt to obtain a revocation of that discharge. Moreover, in the manner in which this scenario has been presented, and considering the knowledge of the parties of the train of events, this Court can not conceive of fraud arising out of a situation in which a party borrows money to satisfy a loan currently encumbering a property, and then encumbers the same property with a deed of trust as security for the refinancing loan.

This Court therefore holds that the issues presented make voluntary abstention inappropriate. Reaching the issues, the Court finds that the real property transfer contained in the Robersons' Final Decree in dissolution of their marriage, and the resulting underlying debt, represents a property settlement, and is therefore dischargeable in bankruptcy. However, the attorneys' fees and court costs awarded to Mrs. Roberson in the Final Decree are nondischargeable as being fundamentally and integrally related to a child support award. Further, this Court holds that the evidence of any fraud committed by Mr. Roberson is insufficient to revoke his discharge pursuant to 11 U.S.C. § 727(d)(1). An Order conforming with this Memorandum Opinion will be entered by the Court.